Walgreens Company. You may proceed with your argument. Ms. McPeters. May it please the court. The district court should not have granted judgment as a matter of law on Walgreens' motion because Mr. Gonzales offered enough evidence to raise a fact question as to each challenged element of his premise's liability claims, namely whether Walgreens knew or should have known of the condition that caused his injuries. There's several pathways that the court can take to reverse the district court's judgment. We've laid those out in our brief. The first one would be the imputed actual knowledge of the customer who plunged the toilet. The second path would be the Corbin-type analysis, which looks at whether the harm and the risk was foreseeable regardless of whether Walgreens had actual or constructive notice of the particular water on the floor on the day. And then the third being the constructive notice path, which looks at did Walgreens have a reasonable opportunity to discover the condition and remedy it? Is it your position that the person who was told that was doing the stalking in the video that that person had constructive notice, or is it your position only that the man who brought the plunger and then was later put out the yellow sign that he had the notice? Or do you think it could be some combination thereof? Your Honor, I think it could be some combination thereof. Any employee or agent of Walgreens could make it so that Walgreens has that constructive notice. And we know that Mr. Perez, who's sort of the second in the chain of command on staff that day, was the one who was approached by the customer who clogged the toilet. And certainly he is the clearest pathway to Walgreens knowing that there was an issue in that restroom. Why didn't you depose him? Your Honor, so the record shows that the plaintiffs tried to depose him. They subpoenaed him and he did not appear for the deposition. And my understanding is that he just never could be found. He no longer worked for Walgreens and never appeared for his deposition and then therefore didn't appear at trial either. So we don't have his testimony. All we really have are some of his statements that come through the testimony of the manager of the store, Lisa Alexander. So, you know, we have to take those with a grain of salt because we just didn't have the opportunity to talk to him. I'd like to address each of those three theories. And if the Court has a preference on, you know, to oblige. But otherwise, I think I'll start with that Corbin-type analysis. You know, in Texas common law, all negligence actions are grounded in the fundamental basis of foreseeability. Was the harmful consequence that resulted from particular conduct or condition foreseeable to the defendant? That's the key, whether it's premises liability, negligent activity, that's everything, right? Was it foreseeable? So the Texas Supreme Court has recognized that in some cases, whether a premises owner had that constructive notice of a condition, as in cases where there's not actual knowledge on the part of the premises owner. We traditionally use the time notice rule to show constructive notice, which the purpose of the time notice rule is to make sure that the premises owner had that reasonable opportunity to discover the condition and do something about it. And courts have said that without that rule, a storekeeper could be held liable for the carelessness of a person outside its control who instantaneously created a dangerous condition that the storekeeper had no time to remedy. Here, none of those concerns are present. We know that the customer was not outside of Walgreens' control because they specifically tasked him or gave him permission to repair the commercial toilet. That's really odd, wasn't it? Yes, Your Honor, it is very odd. But they pulled a plunger off the floor and gave it to the customer to go and work on? Yes, it's very bizarre facts. Every time I think about this case, I just kind of chuckle at that circumstance because I just would never imagine that happening, right? It seems that if a customer approaches a manager and says, hey, this is kind of embarrassing, but the toilet in the men's restroom is clogged, it's the only toilet in there, you would think that the manager would close the restroom, put out a warning cone, do something other than take a plunger off of the store floor, get permission from their manager to expense it, hand it to a customer, walk them down the hallway to the restroom, and then leave them there to repair a clog on a commercial toilet that has high, quote, really good water pressure. It's just strange. And I think that really speaks to the question of, did Walgreens have a reasonable opportunity to do something about this? And that answer just has to be yes. There were so many times in the 22 minutes or so from the time that the customer said, hey, this toilet is clogged to when my client arrives and slips that Walgreens could have done something. Did your client ever say exactly how the water was leaking out of the toilet when he realized the floor was wet? Yes, Your Honor. He testified that the water was covering about 50% of the restroom on the left side, kind of diagonally. And he testified that he observed that it was leaking or seeping from the toilet area to the rest of the restroom. From the bottom of the toilet or from the top where it was? I don't know that he specifically said the bottom or the top of the toilet. But he did testify that he observed that that was where the water was coming from. And there's cases that we've cited in our brief that talk about how a plaintiff's testimony of their personal observance of where the source of leaking water or a puddle is coming from is enough to show that that dangerous condition existed. Did he say that he saw the customer that was in the stall that was using the plunger when he walked in? Did he say he saw that? Your Honor, I'm not sure exactly. I know that the customer was still in the restroom at that time. I think that's undisputed. And the store manager, I think, even testifies to that fact. The man was still in there plunging the toilet. Where does the 20-minute estimate come from? Yes, Your Honor. So the, let's see. So in the record we see that the customer that reported the clog and was working on the toilet entered the hallway towards the restroom at 12.17 p.m., and this is per the video footage, and heads to the restrooms. Eleven minutes later is when the customer returns to the sales floor, flags down Mr. Perez, and then immediately Mr. Perez gets him the plunger and walks him back down the hallway. And then 11 minutes after that is when Mr. Gonzalez arrives at the store, asks, do you have a restroom available to the public, and is directed to the restroom and enters it. So isn't it just 11 minutes between the time the clogged toilet was reported and the time that your client injured himself? Yes, Your Honor. That's correct. And if I misspoke earlier, I apologize. But I'm wondering where the gentleman went. It's not clear to me that the one who brought the plunger to your client. Yes. Mr. Perez, I think, was the one who brought the plunger. My understanding, I'm sorry, Your Honor, do you mean? What happened, because he goes into the same little area where the restrooms are, and then he comes out later and puts the yellow sign. So where was he in the 10 minutes? What is the testimony? I know he didn't testify, but what was the testimony of where he was? So I think the testimony is that in that 11 minutes where the customer has told him, hey, there's an issue in the restroom, I think that the record shows that Mr. Perez is talking to his manager, Lisa Alexander, getting that permission to expense the plunger and give it to the customer for purposes of repairing the clog. And in that time, I think he is just on the sales floor. He walks the customer down the hallway and leaves him there, and then comes back to the sales floor. So then beyond that, I don't know that we have video of what else he was doing in that time. But he did speak to Ms. Alexander, his manager, at that point. Let's see. I think really, though, the court's analysis here can begin and end with Ms. Alexander's testimony, regardless of really which path the court takes, because she testified that she knew that this commercial toilet was clogged. She testified specifically that if someone knew that the toilet in the men's restroom was clogged, then that person knew that there was a danger that somebody was going to slip. Despite knowing that danger, she approves of giving the plunger to the customer, approves of leaving this untrained, unknown person to repair this toilet unsupervised, and doesn't take any precaution of, like I said, supervising the maintenance, warning any other customers who might ask, hey, do y'all have a restroom, placing a warning cone in the restroom, which she says was a, not doing that was a failure to exercise ordinary care. And of course, the simplest thing, I think, would have been to just close the restroom until it had been repaired. But despite knowing all of this, she testifies that she has a conversation with Mr. Gonzalez. She doesn't tell him about any issues with the condition of the restroom. She doesn't tell him that there's some unknown person in there working on the toilet and that he's been in there for about 11 minutes at this point. Instead, she sends him to the restroom. And she agreed that a reasonable prudent store manager would have warned Mr. Gonzalez at that point. That was the perfect opportunity to do that. And she said that that would have been a prudent way to address the danger. She also, like I said, testified or agreed that the failure to place a cone in the restroom, which it's Walgreens' policy that if there's ever any water of any amount on the floor, they've got to put a cone down. She said that when they failed to do that there, that was a failure to use ordinary care. Is a clogged toilet the same as an overflowing toilet? Can't a toilet be clogged and not overflow water onto the floor? Yes, Your Honor. It's certainly possible. But I think the key is that her testimony was that if this toilet was clogged, there was a danger that somebody was going to slip. If it's clogged and not overflowing, how would someone slip? If it wasn't overflowing, I'm not sure. There could be any number of plumbing issues at play here. And we know that it was, whatever it was, was complex enough that they did have to put in a work order to have somebody else, a professional, come fix it. But regardless, you know, viewing the evidence in the light most favorable to Mr. Gonzalez, we have the manager of the store saying, if that toilet's clogged, there is a risk that somebody's going to slip. And the district court, in their opinion, kind of to almost the point that you're making, Your Honor, says, well, you know, not every clogged toilet overflows. But I think that in then concluding that this was not a risk and Walgreens couldn't have known of the risk of a puddle forming, that was the district court incorrectly weighing the evidence, weighing the credibility, and making a finding of fact, when really we ought to have just considered, in the light most favorable, has Mr. Gonzalez raised at least a question that ought to go to the jury? How long did this take to try? I think that it was a, it was all done in one day. It was all one day. The jury's ready to go. And then the verdicts, the J&OV's given. Yes, right after the plaintiff closed their case in chief. And, you know, I want to point out that before the trial, a district court judge, a different sitting senior district court judge, had already twice found that there were fact issues on this exact point. He denied summary judgment on this issue, I think just a month or two, maybe a month before the trial, and then five days before the trial, again denied the Walgreens' motion to reconsider that finding. So that was Judge Ezra? I believe, I think it was Judge Nowen? Judge Nowen. Your Honor, I see that I am just about out of time, so we would ask that the court reverse the judgment as a matter of law. I'm happy to address any further questions that the jury might have. Thank you. May it please the Court. I represent Appley Walgreen, and the essence of why we prevail on all of the issues that appellant has raised is really because there's an evidentiary vacuum as to the knowledge issue, and the appellant has the burden of proof. So the appellant can't succeed unless the court makes unreasonably speculative assumptions that a reasonable jury could not make. And that's why we believe the district court was correct in granting judgment as a matter of law. Could you maybe move the microphone a little closer to you? Yes, is this better? Thank you. Specifically, there's legally insufficient evidence of actual or constructive knowledge. The appellant did not meet his burden to produce evidence that would allow a jury to find Walgreen's liable. I plan to focus my time on constructive notice. I think that's where the action of this case is really at, mainly with the temporal requirement. What about the manager knowing, the actual knowledge that there's a plumbing problem? Yes, again. And her saying that they didn't follow their policies? Yes. I want to make, I think, correct. You want to correct the record in that regard? Why don't you do that? Yes. So the manager did not testify that Walgreen's did not follow their policies. She testified that if the floor was wet, the policy was to put out a cone, but she testified that if the floor was not wet, there was no need to put out a cone, and that their knowledge of a clogged toilet is not a high risk of the toilet overflowing, that there was no special training needed for plunging that toilet. Plunging was not a risk of the toilet overflowing for the toilet to be clogged, not a risk. Is that what she said? She said it was not a high risk, and she thinks that, I think that her testimony was that most often, if you plunge a toilet, it does not overflow. Did she discuss why she didn't go look to see if it had overflown or not, since she knew that it had been plunged? She did not. That was not asked, and so there's, that's part of where there's a vacuum, and since there's a vacuum, the person with the burden of proof, which here is appellant, is the one that can't meet their burden. Did she discuss a very unorthodox process that got us to this place? I think, yeah, and I agree, Your Honor, the fact pattern is odd, but there is no evidence about the interaction between the customer and Walgreens other than the timeline that we can see and Perez's statement to Alexander asking to give a plunger to a customer. Were they creating the danger by having the customer go in and do the work? No. Without having any kind of cones out while the customer was doing work, and they knew the customer was doing work on the property, which is very odd. I believe that, so that's part of, I think the appellant is agreeing that there's no actual knowledge in terms of a Walgreens employee knowing of the water on the floor, and the relevant condition is the water on the floor. We have the case from the Texas Supreme Court just last year, Albertson v. Mohammadi, confirming what this court has found times before, that knowledge of the antecedent condition is insufficient to show actual knowledge. You know, we have a case, though, where it was commonly made a floor slippery, and we felt that was enough, because you knew the antecedent thing using the particular cleanser in the restroom, I believe it was, could make the floor slippery, and the fact that you knew something could cause it, and you knew that the antecedent thing was happening, and you didn't do any checking on it, and you were allowing people in there, that that could be a problem. I think that the distinction really is the, and I think in that case that it's, and in the cases where they have followed the Corbin standard, it's not just the possibility, it's not the could, it's the knew that it would, that it was highly likely, and in cases, for example, like Alonzo and Agbanzi, which I believe Justices Elrod and Clement may have been on the panel, those were cases where there was evidence, or I apologize, not in argued that there, it's known that there's grease that falls on the floor all the time, it needs to be cleaned up daily, and also in Brookshire versus Taylor, which is the Texas Supreme Court case, really disagreeing with Corbin, and that the Texas Supreme Court referenced again last year, that there was a soda dispenser where it was known that ice falls onto the floor from this dispenser, and there are spills from it every day. It is a daily issue that water is on the floor, it has to, it causes slips. They refuse to depart from the traditional constructive notice standard, and the Texas Supreme Court has said in Albertson's, we have since distanced ourselves from this exceptional case, speaking about Corbin. Over the years, we've had several opportunities to apply Corbin and declined to do so. To the extent Corbin's approach could ever be employed after our more recent cases, it would only be in a situation where the defendant had a policy or practice that it knew routinely created an unreasonable risk of harm. And here, the only evidence we have about the history of the toilet is that there were no issues. I apologize, Justice O'Rourke. And I think, Counsel, you're helpfully pointing out that there might be some tension in the Texas precedent, and that the Texas Supreme Court may have been in some, maybe rethinking some of this perhaps, that's your argument, that they did have, that there was this line of cases, but now they may not be following it, but it's not so clear. Are you certainly not asking us to certify this question to the Texas Supreme Court, are you? No, not at all, and let me clarify myself. I am not saying that Corbin was a line of cases that was overruled. It has always, since, I think it was in 1983, it's been an exceptional case. It's been recognized as that for over decades, and I don't believe certification would be needed. I think it's clear from the principles set forth by the Texas Supreme Court, and in this Court's cases following Texas precedent, that the Corbin standard cannot apply here because there is no history of that toilet having issues and no routine. There's also no danger from the outset. Murray v. Chick-fil-A is another case from this Court that refused to apply Corbin and said that even if the restroom is an area that's likely to have spills, we see no basis to eliminate the temporal requirement. Corbin applies to things that are dangerous from the inception, not conditions that become dangerous over time, even if they frequently do become dangerous, and I think that hits on the point Judge Ramirez made on not every clogged toilet overflows. A clogged toilet and knowing that someone is plunging it is not dangerous in and of itself, and that's why we have to go with the traditional constructive knowledge standard. What did the discovery reveal about the maintenance history of this particular toilet? The only evidence that we have in this case about the history with the toilet is that there were no issues. We have Alexander's testimony, which— This toilet had never been clogged. It was never clogged before or after. The only issue with this toilet ever is Gonzalez's report, and he didn't see it overflow, but his report of water after he slipped and his assumption that it may have come from the toilet, and I want to clarify also an issue— I know Mr. Perez was not deposed, but wasn't there a testimony that he corroborated that the floor was wet when he told Ms. Alexander that he saw water in the drain? It had to get to the drain from somewhere else, so— Yeah, and I think that the timing of this is where it's really critical because in this case, as you mentioned to Appellant, I believe, the customer, it's undisputed, the customer was in the restroom before Gonzalez entered during the time he was in there. When he exited and then Gonzalez left, he slipped. He went to go get Perez and brought him back to look. The customer was in there that entire time, and the answer to the question as to whether Gonzalez saw the customer, he testified that he saw the stall door was closed. He did not see legs under it, and Gonzalez testified that when he entered the restroom and exited the restroom the first time, which is the time he slipped, he saw no water on the floor, but he states he did look in the area where once he returned about a minute later, 30 seconds to a minute later with Perez, water was on the floor. And so I don't, you know, it's, it could have overflowed after he left. It could have overflowed five seconds before he slipped, a minute, five minutes, ten minutes. There is no evidence to show when it happened, and it's, the Supreme Court and this Court has been very consistent in saying that if there is not actual knowledge of the condition, not the antecedent situation, the wet floor itself, then constructive notice requires some evidence of how long the condition was present. And that's why I think that constructive notice also fails in this case. Yes? Were you the trial lawyer? I was not. I do have my trial counsel here with me. I came in for the appeal. So this was just, we're on the verge of having the jury deliberate. The gentleman walked out of the restroom with just a little bit of stretching and, you know, I'm sorry, but that's what the video shows. And we've moved for a complicated legal theory in this case. I, yes, I would, I think that the point that Appellant made about how, you know, and the jury was already there, summary judgment had been denied, none of that makes a difference in this case because every time, you know, when the Court ruled on summary judgment, it was looking at the evidence that was before it, and it also . . . It's not preclusive, but it might show some common sense things that might be helpful as you're trying to evaluate what the next steps should be in the interest of efficiency and economy, et cetera. And also, I don't, you know, the Court did not err in granting judgment as a matter of law under 50A as opposed to 50B. The standards are the same, and so even if the jury had found Walgreens liable, we would, the result would still be correct that they are unable to do so. The verdict would have to be overturned because there's insufficient . . . If it could be done here, we would be done. Yes, I understand it's very rare that . . . You see what I'm saying, that if you were not to prevail today, then this has to go all, be done all again, and we're not going to have, I mean, we're not foreshadowing . . . Right. . . . this is the problem with this situation. Yes, and I want to, I think that it's very clear from the evidence that there is no need for a remand, that it is clear there is insufficient evidence as a matter of law to support the elements of a premises liability claim, mainly the knowledge piece. It fails on the Corbin theory. It fails on actual and constructive knowledge under the traditional standard, specifically . . . She knew there was water on the floor, and she didn't put anything on the cone. There's no evidence that the manager knew there was water on the floor until after Gonzalez slipped. The first time any Walgreens employee was informed of any water is when he went to get Perez. He came back to the restroom, and Gonzalez's testimony is that they opened the door. They didn't step into the restroom. They just peered in, and Gonzalez says he then saw water on half the floor. Perez told Alexander that he did not see anything on the floor when they both went in there, but I'm not . . . because of the standard of review, I'm not saying that we have to credit Perez's account. I'm crediting Gonzalez's account that after he slipped . . . Especially since Perez is not here, and he's disappeared into the wind. You can't credit him. Correct, but what I'm saying is that Gonzalez has only produced evidence of knowledge after his slip, and the requirement is that Walgreens had to have knowledge before his slip with sufficient opportunity to remedy or warn of the condition. But what about the fact that they have a duty to go and inspect when they realize there's something going on? I mean, this is a fascinating case. You know, I've had the privilege of serving in the Harris County District Courts before I sat on this court, and we would have our fair share of slip and falls and things, although I know that's probably not the term we use nowadays. But what about their duty once they know that a customer who's probably not a professional toilet fixer is in there working on it, that they have some duty to go and supervise and make sure that it's not creating a dangerous condition? So I think that that brings us back to the constructive knowledge element, and in terms of whether the customer probably didn't have experience, that's also an evidentiary vacuum. A jury could not infer that the customer was not a professional plumber, because we have absolutely no evidence of what the interaction was, and it is odd. It's equally possible that the customer approached Perez and said — He's not their professional plumber, regardless of whether he has particular knowledge. He's not their professional plumber. Well, he — if either he is — I mean, we think he's not an agent at all, but — So I think that merely handing — because that's all that the evidence shows, is that he handed a plunger. I don't think that that is something from which you can infer an agency relationship. We don't have any evidence to show there was an agreement or that Walgreen said, you're going to do this on our behalf, as opposed to the customer just being embarrassed and saying, you know, I want to take care of this. The customer could have said, I'm a plumber, I don't need training. But what we know about the evidence is, under Threlkeld from this court in 2000, citing Texas Supreme Court, and it's been cited many times after that, I think what we have here is meager evidence from which equally plausible but opposite inferences may be drawn is no evidence that a defendant had constructive knowledge of the dangerous condition and is thus legally insufficient to support such a finding. And if a plaintiff's evidence establishes only the possibility that a dangerous condition was present long enough to provide constructive notice, such evidence is legally insufficient to sustain a judgment based on the jury's verdict against the proprietor. So even if we are thinking about, okay, the time that they should have inspected, we still would have to make an unreasonable assumption about when the overflow or leak, their conflicting accounts of that, when that happened, to find that it happened in sufficient time for someone to be able to remedy or warn, and that is what is an improper inference a jury could not make. And speaking to the time specifically in terms of how often someone should inspect, there are cases from this court about, I think in Murray there was a policy that they would inspect every 10 to 30 minutes, and that was specifically for restrooms. Alonzo, there was an argument that it was— I understand that's regular inspections. That's not inspecting something that you have caused to happen that's highly unusual. That's the thing. They've sent somebody in there with their plunger to go and do this work on their property, and they have a duty to supervise that work being done. That's separate and apart from any normal every 30 minutes check the restrooms to make sure they're clean and tidy and safe. I would challenge a couple of pieces of that. I think that the agency thing is not something that can be assumed. It doesn't matter whether they're an agent or not. It means they've sent this person in there, and so that's—they could have said, sir, we'll take care of that. That's our—we'll send the custodian in there. Thank you so much for letting us know the restrooms are now closed. Perhaps you use the other restroom temporarily, and we'll put a cone if you need to go that bad or something. They chose the course of action. They were the people in control. We don't know that from—that they chose to have the customer do it. The customer could have requested it, and in any event— Yes, and they get to say no. Well, but in any event, the fact that Walgreens could have said no does not mean that they controlled the details and manner in which the customer conducted himself, even if he was an agent. The rule is that the owner is not liable for the harm caused by an independent contractor and certainly by third parties unless they control the details of—and the details and the means of the process being used to accomplish the task and— Again, in the plunger, which is the details of the—I mean, this is just a— Yes. This is a very unfortunate circumstance that they sent this person in there with the plunger rather than telling him no. Well, and also— And didn't monitor it. And also from the Los Compadres case from the Texas Supreme Court in 2023, the control has to be—whatever they're controlling has to be of the thing that ends up causing the damage. So unless we're saying that, oh, the plunger broke and they shouldn't—they gave him a bad plunger because that's the only evidence of what they actually did give him, unless that is what caused something to overflow, that wouldn't be sufficient. And we—again, we have no evidence to support that inference. I see my time is up unless the Court has any further questions. Thank you. Thank you. Thank you, Ms. Griffin. Ms. McPheeters, you've saved time for rebuttal. Thank you, Your Honor. May it please the Court. As to the agency question, there is more evidence than just the video of the handing over of the plunger. We have Lisa Alexander, the store manager, testifying that she gave permission to expense the plunger for the purpose of giving it to this guy to fix the toilet. And, you know, as to the question of control, if he wasn't under their control, if he wasn't their agent, it begs the question, so was he not doing a task for Walgreens? Who was he doing it for then? If he didn't have permission to work on the toilet, why would they hand him a plunger and walk him down the hallway? It is unreasonable. No reasonable jury could find that that was the case. No one made Walgreens hand him the plunger. No one prohibited Walgreens from, you know, maybe doing that, but then putting up a warning cone or closing the restroom. It's just, there is certainly enough evidence in the record to show that the customer became an agent of Walgreens when they deputized him to fix the toilet. It's an odd set of facts, but agency law is longstanding. If you are tasking someone to manage some affair for you, they are your agent. I want to also address the question of sort of the tension in the Texas precedent and, you know, some of this court's precedent with regard to the Corbin standard. This is an exceptional case. It's a bit of a bizarre case, and that's not the only reason it's exceptional. But all the cases where courts, including this court, have said Corbin doesn't apply is because there's some issue, but without more. This is a case that has the more. It's not just a clogged toilet. It's not just someone in there working on it. It's the fact that it's a clogged commercial toilet. It's the fact that Walgreens knew about that clog, knew that if the clog in the men's restroom was present, there was a danger that somebody was going to slip. It's then the fact that Walgreens chose to hand a plunger to an unknown, untrained person, which that was testimony that Ms. Alexander agreed to, that he was unknown, untrained, and allow him to fix the toilet unsupervised. All of that is the more that courts are looking for when applying Corbin. The Muhammadi case that was referenced, which is a Texas Supreme Court case where the court declined to apply the Corbin standard, I want to point out that that case in itself is a bit of an oddity. It's a strange procedural situation where there was a jury charge that was bifurcated. There was a question about constructive notice and then a question about actual notice, and the jury was instructed to only answer the actual notice question if they found yes as to constructive notice. They found no as to constructive notice, so then they didn't answer the actual question. So the court was only laser focused on if they had answered the actual knowledge question, would it have made a difference? And the court finds there that Corbin doesn't apply because there was an employee who placed some leaking wet bags in a shopping cart, and those leaked out. And that was really all that was present in terms of the store's knowledge of some condition that they know is likely to cause harm. The court specifically said perhaps Randalls, the store, should have known of the wet floor because a wet floor is a highly likely consequence of a leaking bag, but the jury has already answered the constructive knowledge question in favor of Randalls. So they left the door open for Corbin. Corbin is not dead. The court there specifically is saying maybe they could have shown that the store should have known. That's just not the question that was before them. Here we have evidence that Walgreens should have known. They knew that the harmful consequence that occurred here was foreseeable, and they had every opportunity to address it, but they didn't. So we would ask that the court reverse the judgment as a matter of law. Thank you. We have your argument. Thank you. I appreciate both arguments in this case. The case is submitted. The next case for today is 2024.